# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

TIMOTHY CALLIHAN, et al.,

    Plaintiffs,

v.                                 CIVIL ACTION NO. 2:17-cv-04386

SURNAIK HOLDINGS OF WV, LLC, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before this Court are motions to dismiss filed by Defendant SABIC Innovative Plastics US LLC ("SABIC"), (ECF No. 60); Defendants Evergreen Transportation, LLC, Green Research Center, LLC, Green Sustainable Solutions LLC, Intercontinental Export Import, Inc., Rajiv Naik, Saurabh Naik, Shraddha Naik, Upendra Naik, Polymer Alliance Services, LLC, Sirnaik, LLC, and Surnaik Holdings of WV, LLC (collectively, "Surnaik Defendants"), (ECF No. 62), and Defendant Kuraray America, Inc. ("Kuraray"), (ECF No. 65). For the reasons explained more fully herein, SABIC's motion, (ECF No. 60), is **GRANTED**; Surnaik Defendants' motion, (ECF No. 62), is **GRANTED IN PART** and **DENIED IN PART**; and Kuraray's motion, (ECF No. 65), is **GRANTED**.[1]

---

[1] Also before this Court is Plaintiffs' motion for an extension of time to respond to Defendants' motions to dismiss. (ECF No. 68.) This motion, (ECF No. 68), is **DENIED AS MOOT**.

1

## I. BACKGROUND

This case arises out of a fire at a warehouse facility in Parkersburg, West Virginia, on October 21, 2017. (ECF No. 29 at 9–10.) Plaintiffs Timothy Callihan, Thomas Dent, Marcus Drake, John Jackson, Gloria Hall, Jan Drake Robinson, Thelma Barnett-Guinn, Doris Satterfield, and Wonetta Rose (collectively, "Plaintiffs") allege that Surnaik Defendants "owned, operated, occupied, and/or managed" the warehouse as "a dump site" for hazardous waste. (*Id.* at 10–11.) They assert that "in the weeks and months leading up to" the fire, SABIC and Kuraray shipped hazardous materials to the warehouse but did not instruct Surnaik Defendants about proper storage of such substances. (*Id.* at 12–14.) Plaintiffs further allege that Surnaik Defendants stored these materials without "an effective fire prevention and suppression system" or "a disaster preparedness plan." (*Id.* at 11.) Therefore, Plaintiffs allege, a fire occurred that "required a response from more than twenty emergency departments in six counties spread across West Virginia and Ohio" and that "exposed [Plaintiffs] to smoke, odors, gases, and/or fumes, particulate matter, and other harmful 'fallout material' released by the destruction and/or combustion of harmful chemicals, compounds, hazardous waste, and/or substances." (*Id.* at 16.)

On October 23, 2017, while the fire was still burning, Plaintiffs filed a class action complaint against Surnaik Defendants in the Circuit Court of Wood County, West Virginia. (ECF No. 1-2 at 1–16.) Plaintiffs filed amended complaints on October 31, 2017, (*id.* at 17–39), and November 6, 2017, (*id.* at 40–63). Surnaik Defendants removed the matter to this Court on November 20, 2017. (ECF No. 1.) With this Court's leave, Plaintiffs filed the operative complaint in this case on April 27, 2018, against Surnaik Defendants, SABIC, and Kuraray (collectively, "Defendants"). (ECF No. 29.)[2]

---

[2] Plaintiffs also alleged claims against Defendant E.I. du Pont de Nemours and Company, which Plaintiffs later agreed to voluntarily dismiss without prejudice. (*See* ECF No. 51.)

SABIC filed its motion to dismiss Plaintiffs' complaint on August 15, 2018. (ECF No. 60.) Plaintiffs responded on September 9, 2018, (ECF No. 71), and SABIC replied on September 17, 2018, (ECF No. 75). Surnaik Defendants also filed their motion to dismiss on August 15, 2018. (ECF No. 62.) Plaintiffs responded on September 7, 2018, (ECF No. 69), and Surnaik Defendants replied on September 21, 2018, (ECF No. 76). Finally, Kuraray filed its motion to dismiss on August 15, 2018. (ECF No. 65.) Plaintiffs responded on September 9, 2018, (ECF No. 70), and Kuraray replied on September 14, 2018, (ECF No. 73). As such, the motions to dismiss are fully briefed and ripe for adjudication.

## II.     LEGAL STANDARD

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will

survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

### III. DISCUSSION

#### A. Negligence and Gross Negligence (Counts I and IX)

##### 1. As to Surnaik Defendants

Surnaik Defendants argue that Plaintiffs have not adequately pled past or reasonably certain future injury required to sustain a negligence claim. (ECF No. 63 at 6–7.) Indeed, injury is an essential element of a claim for negligence. *Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016). Plaintiffs allege that Surnaik Defendants' negligence has caused them to suffer "bodily injury and property damage" as a result of their "ingest[ion]" of and "significant[] expos[ure] to" the fire, and they have also "incur[red] out-of-pocket expenses including . . . the cost of obtaining additional lodging, food, bottled water, and other necessary supplies." (ECF No. 29 at 16, 17, 21.) They further allege that their property values have decreased due to the presence of smoke and "fallout material." (*Id.* at 16.) Finally, they allege emotional injury in

4

the form of "emotional and mental stress, anxiety, and fear of current and/or future illnesses." (*Id.* at 17.) The allegations of past injury—although rather vague with respect to any non-economic loss Plaintiffs have suffered—are sufficient to establish injury at this stage.

However, the bulk of the damages Plaintiffs seek appear to stem from alleged future injury they will suffer because of "the potential for contracting serious latent disease." (*Id.* at 21.) For example, Plaintiffs request "expenses reasonably necessary" to "monitor[]" these illnesses, including payment of medical bills for "preventative treatment." (*Id.* at 21–22.) But Plaintiffs fail to plead any facts to demonstrate "reasonable certainty" that they will incur such expenses. *See* Syl. Pt. 3, *Cook v. Cook*, 607 S.E.2d 459 (W. Va. 2004) (quoting Syl. Pt. 7, *Jordan v. Bero*, 210 S.E.2d 618 (W. Va. 1974)). Nothing in their complaint suggests that they underwent testing for latent illnesses or otherwise determined that such illnesses were likely to occur. "[C]ontingent or merely possible future injurious effects are too remote and speculative to support a lawful recovery." Syl. Pt. 3, *Cook*, 607 S.E.2d 459 (quoting Syl. Pt. 7, *Jordan*, 210 S.E.2d 618). Accordingly, Plaintiffs' alleged future injury is insufficiently pled.

Nonetheless, because there are factual allegations of past injury suffered, Surnaik Defendants' motion to dismiss Plaintiffs' negligence and gross negligence claims is **DENIED**.

2. As to SABIC[3]

In addition to arguing that Plaintiffs fail to adequately plead injury, which this Court discussed with respect to Surnaik Defendants, SABIC contends that it did not own or operate the warehouse where the fire occurred, nor was it engaged in a joint venture with Surnaik Defendants to do so. (ECF No. 61 at 15–17.) Plaintiffs allege that Surnaik Defendants—not SABIC— "owned, operated, occupied, and/or managed the [warehouse]." (ECF No. 29 at 10.) Plaintiffs

---

[3] Kuraray does not move for dismissal of Plaintiffs' gross negligence claims. (*See* ECF Nos. 65, 66.)

further allege that Surnaik Defendants were engaged in a joint venture with the remaining Defendants, including SABIC, "allowing them to improperly house, store, and/or improperly dispose of their hazardous waste." (*Id.*)

Plaintiffs' assertion that "SABIC was in a joint venture with [Surnaik] Defendants," (*id.* at 8), is a legal conclusion that this Court is not required to accept as true for purposes of ruling on the motion to dismiss. *See Bennett v. Lending Solutions Inc.*, No. 2:10-cv-01201, 2011 WL 4596973, at *4 (S.D.W. Va. Sept. 30, 2011); *see also Walker v. Prince George's Cty.*, 575 F.3d 426, 431 (4th Cir. 2009) (noting that this Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Instead, to establish a joint venture, Plaintiffs must plead facts showing that Surnaik Defendants and SABIC entered into a contractual relationship "to carry out a single business enterprise for profit, for which purpose they combine[d] their property, money, effects, skill, and knowledge." Syl. Pt. 5, *Armor v. Lantz*, 535 S.E.2d 737 (W. Va. 2000) (defining "joint venture"). Plaintiffs allege that SABIC shipped materials to the warehouse. (ECF No. 29 at 12–13.) There are no facts in the complaint from which this Court may infer that Surnaik Defendants and SABIC "agreed to share profits and losses" with regard to the transfer of these materials or exercised equal "active management or control" over the operations at the warehouse. *See Armor*, 535 S.E.2d at 743, 745. Therefore, Plaintiffs have not adequately pled the existence of a joint venture between SABIC and Surnaik Defendants.

More importantly, the precise conduct on which Plaintiffs base their gross negligence claims is not clear from the complaint, which states only that "Defendants' acts and omissions constitute . . . gross negligence." (ECF No. 29 at 28.) Because Plaintiffs' negligence claims against Surnaik Defendants are based on the fire resulting from their operation of the warehouse, (*id.* at 21), this Court assumes that Plaintiffs mean to base their gross negligence claims on the fire

6

as well. However, Plaintiffs fail to demonstrate that SABIC was responsible for the operation of the warehouse, either independently or as part of a joint venture with Surnaik Defendants. "[G]ross negligence on the part of the defendant must be proved before the plaintiff c[an] recover." *Hopkins v. Grubb*, 230 S.E.2d 470, 473 (W. Va. 1977). Therefore, Plaintiffs' gross negligence claims against SABIC are **DISMISSED WITHOUT PREJUDICE**.

B. *Trespass (Count III)*

Defendants also urge this Court to dismiss Plaintiffs' trespass claims because the allegations do not amount to a tangible interference with Plaintiffs' possession of their land. (ECF No. 61 at 19–21; ECF No. 63 at 7–9; ECF No. 66 at 12–13.) A trespass occurs when the defendant enters upon the plaintiff's land without authority and damages the plaintiff's real property. *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 352 (W. Va. 1945). "[T]he gist of trespass is injury to [the plaintiff's] possession [of the land]." *Belcher v. Greer*, 382 S.E.2d 33, 35 n.1 (W. Va. 1989). "Liability for trespass to real property exists only where there is an intentional intrusion, negligence, or some extrahazardous activity on the part of the alleged wrongdoer" that caused the interference with possession. Syl. Pt. 1, *Bailey v. S.J. Groves & Sons Co.*, 230 S.E.2d 267 (W. Va. 1976).

Plaintiffs allege that "harmful fallout" material—in the form of "chemical smoke, odors, gases and/or fumes" and "particulate matter"—was released as a result of the "destruction and/or combustion of harmful chemicals, compounds, hazardous waste, and/or otherwise harmful substances" during the fire and made its way onto Plaintiffs' land. (ECF No. 29 at 11, 23.) However, "chemical deposits upon [land] from fumes, gases, and dust" that are emitted as a result of a defendant's activities on its own property "and carried over the land by air currents, or spreading over it through the air" do not constitute a trespass under West Virginia law. *Bartlett*

*v. Grasselli Chem. Co.*, 115 S.E. 451, 451, 455 (W. Va. 1922). Therefore, Plaintiffs' claims for trespass are **DISMISSED WITH PREJUDICE**.

  *C. Nuisance (Count IV)*

  Next, Defendants contend that Plaintiffs' allegations fail to state a claim for either private nuisance or public nuisance. (ECF No. 61 at 21–22; ECF No. 63 at 9–12; ECF No. 66 at 13–14.) Surnaik Defendants argue that Plaintiffs seek to vindicate a public right and thus cannot establish a private nuisance claim but similarly may not bring a public nuisance claim because they have alleged no special injury. (ECF No. 63 at 9–12.) SABIC and Kuraray assert that any potential nuisance did not originate from their property. (ECF No. 61 at 21–22; ECF No. 66 at 13–14.)

  *1. Private Nuisance*

  "A private nuisance is a substantial and unreasonable interference with the private use and enjoyment of another's land." Syl. Pt. 2, *Bansbach v. Harbin*, 728 S.E.2d 533 (W. Va. 2012) (quoting Syl. Pt. 1, *Hendricks v. Stalnaker*, 380 S.E.2d 198 (1989)). It "is anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable." *Hendricks*, 380 S.E.2d at 200 (quoting *Martin v. Williams*, 93 S.E.2d 835, 844 (1956)). Further, a private nuisance includes "conduct that is intentional and unreasonable, negligent or reckless, or that results in an abnormally dangerous condition[] or activities in an inappropriate place." *Bansbach*, 728 S.E.2d at 537. However, "[n]ot every interference with a person's use and enjoyment of land is actionable." *Id.* at 538.

  "Recovery for a private nuisance is limited to plaintiffs who have suffered a significant harm to their property rights or privileges caused by the interference." *Hendricks*, 380 S.E.2d at 201. That is, a private nuisance "injures one person or a limited number of persons only." *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 354 (W. Va. 1945). Indeed, this is what

distinguishes a private nuisance from a public nuisance. *Id.* Plaintiffs allege that they suffered "bodily injury and property damage" as a result of their "expos[ure] to smoke, odors, gases, and/or fumes, particulate matter, and other harmful 'fallout material'" from the fire. (ECF No. 29 at 16–17, 24.)[4] However, Plaintiffs fail to explain the nature of their alleged bodily injury and property damage, or why their alleged exposure to "fallout material" is limited to a small number of individuals as opposed to the general public. Tellingly, their most sweeping proposed class purports to include all "[r]esidents of Wood County, West Virginia[,] and Washington County, Ohio[,] as of October 21, 2017." (*Id.* at 17.) Plaintiffs' claims for private nuisance—at least insofar as they are based on Plaintiffs' exposure to "fallout material" from the fire—are more appropriately brought as claims for public nuisance. That said, because it is unclear whether Plaintiffs may have a claim for private nuisance based on another aspect of the fire, the private nuisance claims are **DISMISSED WITHOUT PREJUDICE**.

   2. *Public Nuisance*

In contrast to a private nuisance, "[a] public nuisance is an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons." *Sharon Steel Corp. v. City of Fairmont*, 334 S.E.2d 616, 620 (W. Va. 1985) (quoting *Hark*, 34 S.E.2d at 354). In other words, a public nuisance is an interference with land use and enjoyment that "affects the general public." *Id.* (quoting *Hark*, 34 S.E.2d at 354).

---

[4] In their responses to the motions to dismiss, Plaintiffs mention private nuisance based on water pollution, but there are no such allegations in the complaint. (ECF No. 69 at 13–14; ECF No. 70 at 15–17; ECF No. 71 at 14–16; *see* ECF No. 29.) Bizarrely, Plaintiffs assert that they need discovery to "know if the contaminated water reached the groundwater below [their] property or affected a direct supply of water on [their] property." (ECF No. 69 at 14; ECF No. 70 at 16; ECF No. 71 at 15.) However, the availability of the discovery process does not override Plaintiffs' obligation to adequately investigate their claims prior to filing suit. *See Simpson v. Welch*, 900 F.2d 33, 36 (4th Cir. 1990) (per curiam) (stating that Federal Rule of Civil Procedure 11 "imposes a duty to conduct a pre-filing examination of both the facts and the law before instituting legal process" (internal quotation marks omitted)). The fire occurred more than one year ago, and Plaintiffs have had ample opportunity to conduct water testing on their own property, if warranted.

9

"Ordinarily, a suit to abate a public nuisance cannot be maintained by an individual in his private capacity, as it is the duty of the proper public officials to vindicate the rights of the public." *Id.* (quoting *Hark*, 34 S.E.2d at 354). "A private individual can maintain an action for relief against a public nuisance only when he has suffered therefrom an injury different from that inflicted upon the public in general, not only in degree, but in character." *Int'l Shoe Co. v. Heatwole*, 30 S.E.2d 537, 540 (W. Va. 1944).

In their responses to the motions to dismiss, Plaintiffs claim that they "allege that they sustained personal injuries, including those closest to the fire, by inhaling toxic fumes that others were not exposed to who lived farther away and their soils and air were more toxic than those who lived away from [the warehouse]." (ECF No. 69 at 12; ECF No. 70 at 15; ECF No. 71 at 14.) However, nowhere in their complaint do Plaintiffs make such an allegation. (*See* ECF No. 29.) Even if they did, Plaintiffs nonetheless fail to explain how they were uniquely affected by the fire as to permit them to bring claims for public nuisance. Because it is unclear whether Plaintiffs in fact can allege a special injury, the claims for public nuisance are **DISMISSED WITHOUT PREJUDICE**.

### D. Negligent Infliction of Emotional Distress (Count V)

#### 1. As to Surnaik Defendants

Surnaik Defendants assert that Plaintiffs' claims for negligent infliction of emotional distress are insufficiently pled. (ECF No. 63 at 12–14.) "In order to recover for negligent infliction of emotional distress based upon the fear of contracting a disease, a plaintiff must prove that he or she was actually exposed to the disease by the negligent conduct of the defendant, that his or her serious emotional distress was reasonably foreseeable, and that he or she actually

suffered serious emotional distress as a direct result of the exposure." Syl. Pt. 12, *Marlin v. Bill Rich Constr., Inc.*, 482 S.E.2d 620 (W. Va. 1996).

Plaintiffs allege that Surnaik Defendants stored several harmful substances linked to cancer in the warehouse at the time of the fire. (ECF No. 29 at 15.) They further allege that these materials were destroyed or combusted as a result of the fire and released "smoke, odors, gases and/or fumes, particulate matter, and other harmful 'fallout material'" to which Plaintiffs were exposed. (*Id.* at 16.) As such, Plaintiffs have sufficiently alleged that the fire exposed them to cancer.

However, Plaintiffs have not adequately pled either of the other required elements. "In addition to other factors which may be adduced in evidence to prove that serious emotional distress arising from the fear of contracting a disease is reasonably foreseeable, the evidence must show . . . that the disease will produce death or substantial disability requiring prolonged treatment to mitigate and manage or promising imminent death." Syl. Pt. 13, *Marlin*, 482 S.E.2d 620. Plaintiffs' allegation that the diseases named in the complaint "will produce death or substantial disability requiring prolonged treatment to mitigate and manage," (ECF No. 29 at 25), is a "naked assertion[]' devoid of 'further factual enhancement'" that will not satisfy the notice pleading standard. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In addition, Plaintiffs' allegation that they "have suffered severe emotional distress" in the form of "fear of developing potentially fatal diseases," (ECF No. 29 at 25), is insufficient because this fear is the theory of Plaintiffs' claims; it is not in itself the "severe emotional distress."

Because Plaintiffs may be able to plead sufficient factual matter to establish a claim for negligent infliction of emotional distress, these claims are **DISMISSED WITHOUT PREJUDICE** as to Surnaik Defendants.

*2. As to SABIC and Kuraray*

SABIC argues that it cannot be held liable for negligent infliction of emotional distress because it did not own or operate the warehouse and was not engaged in a joint venture with Surnaik Defendants to do so. (ECF No. 61 at 15–17.) Kuraray makes a similar argument and further contends that it owed no duty of care to Plaintiffs. (ECF No. 66 at 7–8, 14.)

A claim for negligent infliction of emotional distress in this context requires that the plaintiff be "exposed to the disease *by the negligent conduct of the defendant*." Syl. Pt. 12, *Marlin*, 482 S.E.2d 620 (emphasis supplied). Put simply, a claim for negligent infliction of emotional distress requires negligence. Plaintiffs' claims for negligent infliction of emotional distress, like their claims for gross negligence, are based on Defendants' "negligent[] operat[ion] and/or manage[ment]" of the warehouse. (ECF No. 29 at 24; ECF No. 71 at 17.) As this Court has explained, the complaint insufficiently alleges that SABIC was responsible for the operation of the warehouse, either independently or as part of a joint venture with Surnaik Defendants. This Court's conclusions apply equally to Kuraray. Accordingly, Plaintiffs' negligent infliction of emotional distress claims against SABIC and Kuraray are **DISMISSED WITHOUT PREJUDICE**.

E. *Failure to Warn (Count VI)*

SABIC and Kuraray argue that Plaintiffs' failure to warn claims against them should be dismissed because they owed no duty to the general public with regard to the products they shipped to the warehouse. (ECF No. 61 at 11–15; ECF No. 66 at 9–12.) Plaintiffs allege that SABIC and Kuraray failed "to provide Material Safety Data Sheets and/or other technical literature" to instruct Surnaik Defendants about proper storage of the materials SABIC and Kuraray shipped to Surnaik Defendants. (ECF No. 29 at 26.) Plaintiffs further allege that SABIC and Kuraray "failed to

warn [Surnaik Defendants]" about "dangerous propensities in the products . . . including . . . flammability." (*Id.*) Therefore, Plaintiffs' failure to warn claims are based on a duty owed to Surnaik Defendants, not to Plaintiffs.

Even if SABIC and Kuraray failed to provide warnings to Surnaik Defendants about the storage of the materials, Plaintiffs cannot bring the claims on Surnaik Defendants' behalf. A plaintiff may bring an action "on behalf of a third party for injury done to the third party," *A Helping Hand, LLC v. Balt. Cty.*, 515 F.3d 356, 363 n.3 (4th Cir. 2008) (emphasis deleted), if there is both "a close relationship" between the plaintiff "and the person whose right she seeks to assert" and "a hindrance to the third party's ability to protect [its] own interests," *Freilich v. Upper Cheseapeake Health, Inc.*, 313 F.3d 205, 215 (4th Cir. 2002). Plaintiffs do not plead any facts that would suggest the existence of such a relationship or any obstacles to Surnaik Defendants' bringing such a claim on their own behalf.

Plaintiffs' failure to warn claims also fail to the extent they assert that SABIC and Kuraray owed Plaintiffs a duty to warn about proper storage of the materials. "In ascertaining whether a duty to warn exists, the basic inquiry is whether it was reasonably foreseeable to the manufacturer that the product would be unreasonably dangerous if distributed without a warning." *Church v. Wesson*, 385 S.E.2d 393, 396 (W. Va. 1989). However, this duty is owed "to any person who might be expected to use [the product]." *Morningstar v. Black & Decker Mfg. Co.*, 253 S.E.2d 666, 679 (W. Va. 1979). The complaint alleges that SABIC and Kuraray shipped materials to Surnaik Defendants, not to Plaintiffs. (ECF No. 29 at 12–14.) Plaintiffs do not allege that they used the materials or otherwise came in contact with them prior to the fire. Therefore, Plaintiffs were not foreseeable users of the materials, and SABIC and Kuraray were not obligated to warn them.

Because SABIC and Kuraray did not owe Plaintiffs a duty to warn and because Plaintiffs cannot bring a failure to warn claim on Surnaik Defendants' behalf, Plaintiffs' failure to warn claims are **DISMISSED WITH PREJUDICE**.

*F. Medical Monitoring (Count VII)*

*1. As to Surnaik Defendants*

Surnaik Defendants assert that the complaint fails to state a claim for medical monitoring because it recites only conclusory allegations of the elements of such a claim. (ECF No. 63 at 14–16.) "In order to sustain a claim for medical monitoring expenses . . . the plaintiff must prove that (1) he or she has, relative to the general population, been significantly exposed; (2) to a proven hazardous substance; (3) through the tortious conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease; (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and (6) monitoring procedures exist that make the early detection of a disease possible." Syl. Pt. 3, *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424 (W. Va. 1999).

Plaintiffs allege that several hazardous substances were stored in the warehouse at the time of the fire and that these substances are linked to cancer. (ECF No. 29 at 15; 26–27.) They also allege that "the destruction and/or combustion" of these materials caused them to be "exposed to smoke, odors, gases, and/or fumes, particulate matter, and other harmful 'fallout material.'" (*Id.* at 16.) Specifically, Plaintiffs allege that they "ingested" the substances. (*Id.* at 26.)

However, this is where the well-pleaded factual allegations end. Plaintiffs allege each of the remaining elements of a medical monitoring cause of action without any factual support. (*See id.* at 27.) This Court agrees with Plaintiffs that they are not required "to detail highly complex

medical monitoring protocols, to identify the health care facilities through which such testing protocols will be administered, or even to quantify the increased risk of developing a serious latent disease" in their complaint. (ECF No. 69 at 17.) But Plaintiffs fail to connect the ingestion of the named substances with a likely risk of developing disease, and they plead no facts to demonstrate that their likelihood of developing cancer necessitates additional screening that would not be recommended absent their exposure to the fire. Allegations that cancer-causing substances were stored in the warehouse at the time of the fire and that Plaintiffs ingested smoke and particulate matter during the fire does not amount to proof that medical monitoring "expenses are necessary and reasonably certain to be incurred." *Bower*, 522 S.E.2d at 431. Accordingly, Plaintiffs' claims for medical monitoring against Surnaik Defendants are **DISMISSED WITHOUT PREJUDICE**.

      *2. As to SABIC and Kuraray*

SABIC and Kuraray argue that Plaintiffs' medical monitoring claims against them should be dismissed because Plaintiffs have not sufficiently alleged any tortious conduct. (ECF No. 61 at 24; ECF No. 66 at 15.) Indeed, "underlying liability [for medical monitoring expenses] must be established based upon a recognized tort" that renders the defendant "legally responsible for exposing the plaintiff to a particular hazardous substance." *State ex rel. City of Martinsburg v. Sanders*, 632 S.E.2d 914, 918–19 (W. Va. 2006) (emphasis deleted) (quoting *Bower*, 522 S.E.2d at 433). Because Plaintiffs fail to allege any other tort claim against SABIC and Kuraray for the reasons described in this Opinion, Plaintiffs' medical monitoring claims against SABIC and Kuraray are **DISMISSED WITHOUT PREJUDICE**.

15

### G. Unjust Enrichment (Count VIII)

Defendants next argue that Plaintiffs' claims for unjust enrichment should be dismissed. (ECF No. 61 at 23–24; ECF No. 63 at 16–17; ECF No. 66 at 15–17.) A claim for unjust enrichment lies where the defendant "receive[s] and retain[s]" benefits "under such circumstance that it would be inequitable and unconscionable to permit the [defendant] to avoid payment therefor." *Realmark Devs., Inc. v. Ranson*, 542 S.E.2d 880, 884–85 (W. Va. 2000). Surnaik Defendants contend that they have received no benefit but instead "los[t] valuable products" because of the warehouse fire. (ECF No. 63 at 16.) SABIC and Kuraray assert that they receive no benefit from any "storage" of materials on Plaintiffs' properties because they no longer owned the materials after selling them to Surnaik Defendants. (*See* ECF No. 61 at 23; ECF No. 66 at 16.)

Plaintiffs allege that Defendants benefit from "storing their harmful chemicals . . . and fallout on [Plaintiffs'] properties . . . thereby avoiding the cost to safely dispose of and/or store said harmful chemicals and/or fallout." (ECF No. 29 at 27.) They concede in their responses to the motions to dismiss that "they have not sufficiently pled" their unjust enrichment claims. (ECF No. 69 at 18; ECF No. 70 at 20; ECF No. 71 at 20.) However, Plaintiffs request that the claims be dismissed without prejudice.

This Court previously noted that identical claims based on similar allegations in a suit arising from the same warehouse fire were an "immense reach[]" under the existing law. *See Barker v. Naik*, No. 2:17-cv-04387, 2018 WL 3824376, at *5 (S.D.W. Va. Aug. 10, 2018). It is likewise doubtful that Plaintiffs here will be able to establish an unjust enrichment claim on these facts. Unjust enrichment requires that the unjustly enriched party know about and consent to the benefit conferred. *See Hohmann v. Wetzel Cty. Court*, 156 S.E. 86, 88 (W. Va. 1930) ("[T]he

16

stone had already been placed in the road without the knowledge or consent of the county court, and an implied contract to pay on quantum meruit for benefit received does not follow as a conclusion of law."); *see also Copley v. Mingo Cty. Bd. of Educ.*, 466 S.E.2d 139, 145 n.17 (W. Va. 1995) (giving same standard for quantum meruit claim as for unjust enrichment claim). It also requires that compensation be "reasonably expected" under the circumstances. *Town of Cowen v. Cobb*, No. 15-0438, 2016 WL 2969917, at *4 (W. Va. May 20, 2016) (quoting *Unjust Enrichment*, Black's Law Dictionary (10th ed. 2014)). At its core, Plaintiffs' theory obligates Defendants to pay storage fees for "chemical smoke," "fumes," and "particulate matter" that were deposited on their land as a result of the fire. (*See* ECF No. 29 at 11, 27.) This is, quite frankly, absurd. Accordingly, Plaintiffs' unjust enrichment claims are **DISMISSED WITH PREJUDICE**.

*H. Declaratory Judgment (Count X)*

Plaintiffs seek a declaration that Defendants may be held jointly and severally liable for the damages in this case. (ECF No. 29 at 28–29.) Generally, under West Virginia law, "the liability of each defendant for compensatory damages shall be several only and may not be joint." W. Va. Code § 55-7-13c(a). However, joint and several liability is permissible as to any defendant "whose conduct constitutes an illegal disposal of hazardous waste" when that conduct injures the plaintiff. W. Va. Code § 55-7-13c(h)(3). This exception relies on the definition of the disposal of hazardous waste used in the West Virginia Hazardous Waste Management Act ("HWMA"), W. Va. Code § 22-18-1, *et seq. See* W. Va. Code § 55-17-13c(h)(3); *see also id.* § 22-18-3.

Essentially, Plaintiffs seek a declaration that Defendants violated the HWMA. Whether Defendants may be held jointly and severally liable for Plaintiffs' damages under § 55-7-13c(h)(3)

is a procedural matter that is wholly dependent on such a violation.[5] To institute a civil action for a violation of the HWMA, the plaintiff must first provide notice "to the appropriate enforcement, permit issuing, or rule-making authority and to the person against whom the action will be commenced" at least 60 days prior to filing the complaint. W. Va. Code § 22-18-19(a). Plaintiffs do not allege that they provided such notice. Because it is unclear whether Plaintiffs did in fact serve the notice, Plaintiffs' declaratory judgment claims are **DISMISSED WITHOUT PREJUDICE**.[6]

I. *Veil-Piercing (Count XI)*

Finally, Surnaik Defendants argue that the veil-piercing claims against them are "not a freestanding cause of action" but "a theory of liability or equitable remedy that may be used against particular individuals by removing the barrier to their personal liability with respect to substantive claims against a business entity." (ECF No. 63 at 21–22.) Surnaik Defendants further contend that Plaintiffs have not pled facts warranting veil-piercing liability. (*Id.* at 23–24.) Plaintiffs appear to agree, as they have not responded to Surnaik Defendants' arguments in favor of dismissal. (*See* ECF No. 69.) "[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, [this Court] may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003); *see Muhammad v. Maryland*, No. ELH-11-3761, 2012 WL 987309, at *1 n.3 (D. Md. Mar. 20, 2012) ("[B]y failing to respond to an argument made

---

[5] Plaintiffs allege that "Defendants improperly disposed of hazardous waste, as that term is defined in [§ 22-18-3]," (ECF No. 29 at 29), but this allegation is a legal conclusion this Court is not required to accept as true for purposes of ruling on the motions to dismiss. *See Walker*, 575 F.3d at 431 (noting that this Court is "not bound to accept as true a legal conclusion couched as a factual allegation").

[6] This Court further notes that Plaintiffs are prohibited from filing a citizen-suit "if the state has commenced and is diligently prosecuting a civil or criminal action" based on the alleged violation. W. Va. Code § 22-18-19(a).

in a motion to dismiss, a plaintiff abandons his or her claim."). Accordingly, Plaintiffs' claims for piercing the corporate veil are **DISMISSED WITH PREJUDICE**.

## IV. CONCLUSION

For the foregoing reasons, SABIC's motion to dismiss, (ECF No. 60), is **GRANTED**; Surnaik Defendants' motion to dismiss, (ECF No. 62), is **GRANTED IN PART** and **DENIED IN PART**; and Kuraray's motion to dismiss, (ECF No. 65), is **GRANTED**. Plaintiffs' claims for gross negligence against SABIC, private nuisance, public nuisance, negligent infliction of emotional distress, and medical monitoring are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs' claims for trespass, failure to warn, unjust enrichment, and veil-piercing are **DISMISSED WITH PREJUDICE**. Plaintiffs' claims for negligence against Surnaik Defendants and gross negligence against Kuraray remain.

If Plaintiffs desire to file an amended complaint in order to address the claims this Court has dismissed without prejudice, the complaint must be filed on or before January 2, 2019. As the new complaint will be Plaintiffs' fourth amended complaint in this action, no further amendments will be permitted absent compelling circumstances. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (approving denial of amendment in cases of "repeated failure to cure deficiencies by amendments previously allowed").

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 3, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE